CASE 57—PETITION EQUITY—NOVEMBER 6.

# Willett v. Johnson, &c.

# Johnson v. Finzer, &c.

APPEALS FROM LOUISVILLE CHANCERY COURT.

1. LIENS—RIGHTS OF JUNIOR LIEN-HOLDERS.—A contract between mortgagor and mortgagee extending the time of payment of the mortgage debts, and providing for the compounding of interest, can not be enforced so as to prejudice junior lien-holders whose liens were created prior to the making of the new contract.

2. JUDICIAL SALES—TERMS OF SALE.—In directing that several tracts of land, which will probably command different prices, be sold separately, it is error to direct that a certain part of the entire purchase price be paid in cash without apportioning it, it being impossible for the officer to announce beforehand what proportion of the cash payment each purchaser will be required to pay.

3. SAME.—The authority given by section 827 of the Code to the Louisville Chancery Court to direct a sale of real property for cash, was doubtless intended to apply to property within the limits of the city, and not to property in agricultural communities. But whether so or not, it was error for that court to require a cash payment of so large an amount as $2,000 in directing the sale of land used for agricultural purposes.

4. SAME.—The amount to be raised by the sale of several tracts of land being about $20,000, a sale for $2,000 cash, the residue of the purchase money to be paid in six and twelve months, was not a sale on a reasonable credit within the meaning of the Code, considering that those who might be expected to bid were farmers. The chancellor erred in requiring any part of the purchase price to be paid in cash, and also in not giving a longer time for the payment of the balance.

P. B. MUIR FOR APPELLANT WILLETT.

1. The order of sale should be set aside because of the gross abuse of discretion by the chancellor in prescribing the terms of sale. A credit of six and twelve months is not *reasonable* in selling a *farm* of such value as that ordered to be sold in this case. (Civil Code, section 827.)

2. The chancellor had power to *cause* the land to be divided, but had no power to make the division by his judgment. (Civil Code, section 694.)

Willett v. Johnson, &c.    Johnson v. Finzer, &c.

R. W. WOOLLEY AND MUIR & HEYMAN OF COUNSEL FOR AP-
PELLANT WILLETT.

W. LINDSAY FOR ISABELLA G. JOHNSON.

1. Johnson and Willett had the right to make any new or modified con-
tract as to interest, provided the new contract did not exceed nine
per cent. It was error, therefore, to prefer Finzer to Mrs. Johnson,
unless the new contract gave her a lien exceeding nine per cent., and
then only to the extent of the excess.

2. The compounding of the interest at $7\frac{1}{2}$ per cent. semi-annually does not
exceed simple interest at 9 per cent.

STERLING B. TONEY ON SAME SIDE.

1. The judgment of April 27, 1883, was a final judgment in so far as it
was *in personam,* and the court had no power, after the expiration
of sixty days, to modify or change it in any way. Therefore, the
judgment of November 8, 1883, in so far as it lessens the amount of
the money judgment of April 27, 1883, was unauthorized. (Bullitt's
Code, section 772.)

2. Mrs. Johnson is entitled to a superior lien not only for the principal of
her debt, but for interest as contracted for.

3. The judgment appealed from does not possess sufficient legal certainty
as to the terms and conditions of sale. A judgment must leave noth-
ing touching the amounts or parties doubtful or uncertain. (Stratton
v. Mut. Ins. Soc., 6 Rand., 30 and seq.)

4. The contract between Willett and Johnson as to interest was valid and
binding. Within the limits and restrictions of the statute, contract-
ing parties may enter into any agreement as to the amount of a loan,
and the period it shall cover, and rate of interest it shall bear, and the
times or rests when said interest shall become due and payable.
(Phinney v. Baldwin, 16 Ill., 108; Crosthwait v. Misener, 13 Bush,
543; Corcoran v. Doll, 32 Cal., 88; Sessions v. Richmond, 1 R. I.,
305; Brewster v. Wakefield, 1 Minn., 352.)

BYRON BACON FOR APPELLEES, FINZERS.

1. The judgment of November 8, 1883, is not in conflict with that of
April 27, 1883, as the one is purely a personal judgment, while the
other enforces a lien therefor. and adjusts priorities.

2. The contract between Willett and Johnson for the compounding of in-
terest can not vary the rights of the Finzers, as they existed before
the making of that contract.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

May 19, 1876, J. S. Willett executed to Isabella G.
Johnson his individual note for $8,000 borrowed money,

payable three years thereafter, and bearing interest from maturity at the rate of nine per cent. per annum. He, with John Finzer and brothers, his sureties, at the same time executed to her six other notes for $360 each, which respectively fell due during the three years, as the semi-annual installments of interest at the same rate on the principal sum for which they were given accrued.

To secure the payment of the seven notes, Willett executed to her a mortgage of that date on three tracts of land, containing 125½, 136 and 44 acres, in which it was stipulated that if John Finzer and brothers were compelled to pay any of the six interest notes for which they were bound as sureties, they were, to the extent of such payment, to be substituted to her rights, subject, however, to her superior lien.

August 8, 1877, Willett borrowed of John Finzer and brothers $5,230, for which he gave them his note, bearing interest at the rate of eight per cent. per annum from date until paid, and payable in twenty-two months ; and to secure the payment of the note, he executed to them a mortgage on the same three tracts of land.

This action was instituted August 28, 1882, by Mrs. Johnson, to recover judgment on the note for $8,000, and for other sums hereafter mentioned, and to subject the mortgaged property to the payment.

In her petition she states that at the maturity of the principal note, May 19, 1879, she agreed with Willett to extend the time for its payment three years further, and to reduce the rate of interest thereon to seven and one-half per cent. per annum, payable semi-annually,

which agreement is evidenced by a writing in Willett's possession, and also by an indorsement on the note.

She further states that all the installments of interest payable under that agreement, each of which was $300, had, when the action was commenced, been paid by Willett except the one which was due May 19, 1882, and that he then owed her the principal sum of $8,000, and interest thereon at seven and one-half per cent., payable semi-annually, from May 19, 1882, until paid, and the $300 mentioned, with interest at the rate of six per cent. from the same date.

John Finzer and brothers being made defendants, filed their answer and cross-petition against Willett, in which they aver they paid off the six notes for $300 each as they fell due, and ask judgment for the amount and six per cent. interest from the time of such payments, and also for the $5,220 loaned to him, with eight per cent. interest, and for a sale of the three tracts of land to pay their debts.

April 27, 1883, the chancellor rendered personal judgment by default in favor of the plaintiff, Johnson, against the defendant, Willett, for $8,000, and interest thereon at seven and one-half per cent., payable semi-annually, from November 19, 1882, until paid, the semi-annual installments to bear interest at six per cent. from the dates they severally fall due until paid, and for the further sum of $300, being the installment which became due November 19, 1882, together with six per cent. interest from that date. But the installment of $300 mentioned, which fell due May 19, 1882, was paid after the action was commenced, and no judgment was rendered therefor.

November 8, 1883, personal judgment by default was
rendered in favor of John Finzer and brothers for the
several debts set up in their cross-petition ; and it was,
at the same time, adjudged that they held a lien on the
three tracts of land for the satisfaction of their debts,
which, however, was inferior to the lien of the plaintiff,
Johnson, "save as to interest on said several sums of
$300 coming to her as aforesaid, for which interest her
said lien is inferior to that of said cross-plaintiff."

To pay the several sums mentioned, the marshal of
the court was, by that judgment, directed to sell pub-
licly to the highest bidder so much of the land as might
be necessary, the several tracts to be separately sold in
the order they are enumerated and described in the
judgment.

It was further directed in the judgment that of the
purchase money, $2,000 should be paid in cash on the
day of sale, and for equal parts of the remainder the
marshal was required to take from the purchaser or
purchasers bonds, payable in six and twelve months,
bearing interest for so much of the plaintiff's and cross-
plaintiff's debts as bear interest at six per cent. at that
rate, for so much of the plaintiff's debt as bears seven
and one-half per cent. at that rate, and for so much of
the debt of cross-plaintiffs as bears eight per cent. at
that rate.

From that judgment both the plaintiff, Mrs. Johnson,
and defendant, Willett, appeal.

The ground upon which the plaintiff seeks a reversal
is, that the chancellor decided that no part of the pro-
ceeds of the mortgage property should be applied to
pay interest accrued or accruing on the several sums of

$300, being semi-annual installments of interest on the principal debt, until all the debts mentioned of John Finzer and brothers are satisfied.

In the personal judgment rendered in her favor April 27, 1883, it is distinctly recited that the action was retained for subsequent hearing on the cross-petition of John Finzer and brothers, and as to the matter of the enforcement of the liens of the plaintiff and cross-plaintiffs. Consequently, the chancellor was not precluded by that judgment from subsequently determining the question of priority of liens.

The note for $8,000, when executed May 19, 1876, contained no promise by Willett to pay semi-annual installments of interest after it fell due May 19, 1879. It is true the six notes for $300 each were given for the semi-annual interest, at the rate of nine per cent. per annum, that was to accrue between the date and maturity of the principal note. But those notes were executed by Finzer brothers, with a knowledge of the contract between Mrs. Johnson and Willett as it then stood, and upon the faith that she would enforce her lien to satisfy the debt with reasonable diligence, or at least that she would not, by a new contract with Willett, place it out of her power to sue for three years after the note matured.

While the contract for an extension of the time of payment was binding on the parties to it, it was a change of not merely the form, but the substance of the original contract; and being so, it should not be enforced so as to lessen the security the Finzer brothers had for the payment of their debts before it was made, or in any way prejudice their rights.

It is no answer to this proposition to say that the rate of interest was reduced by the new contract from nine to seven and one-half per cent.; for the amount of interest already collected by her under that contract, during the three years' extension, amounts to a great deal more than interest at nine per cent. would have been if the principal debt had been duly sued on when it fell due. This, however, is not simply a question of gain or loss to the junior lien-holders, but it is whether the proceeds of the mortgage property shall be first applied to pay compound interest, which Mrs. Johnson claims the right to recover in virtue solely of a contract that did not exist when the junior mortgagees acquired their liens, and to which contract they are strangers.

In our opinion, the chancellor properly gave preference to the debts of cross-plaintiffs over the claim of the plaintiff for interest on interest.

No question is raised as to the plaintiff's priority in respect to the interest on the note for $8,000 accrued subsequent to May 19, 1882, and it is, therefore, not proper to consider it.

The judgment for a sale of the property will have to be reversed on the appeal of Willett.

It seems to us impracticable for the marshal to sell the property according to the directions of the chancellor. For as these three tracts of land are required to be sold separately, and differing in quantity, must probably, if not certainly, command different prices, it will be impossible for the marshal to determine, or announce to bidders beforehand, what proportion of the $2,000 each purchaser, if there should be more than one, will be required to pay in cash; and whether the three tracts

be purchased by one or by three persons, the uncertainty as to the amount to be paid in cash will be calculated to deter bidding to the injury of the debtor, even if a purchaser under such circumstances could be held to his bid.

Section 827, Civil Code, which relates to sales of property under judgments of the Louisville Chancery Court, is as follows: "Sales of property shall be for cash, or on reasonable credit, or for part cash and part on reasonable credit; but a sale of personal property shall not be on a longer credit than four months."

By that section the terms of a sale of real property is left to the discretion of the chancellor, and this court should not, of course, assume that discretion has been unreasonably exercised, or reverse, unless satisfied the sale, if made in pursuance of the judgment, will injure the creditor or oppress the debtor.

Section 496 of the Code, which is applicable to courts of the State generally, expressly provides that every sale made under an order of court must be upon reasonable credits, to be fixed by the court, not less than six months for real property.

The exceptional authority given by section 827 to the Louisville Chancery Court to direct a sale of real property for cash, was doubtless intended to be exercised in cases of property being within the limits of the city of Louisville, where the nature of business and the manner of doing it require more promptness, and the means of meeting money transactions are more accessible than is the case in agricultural communities. But whatever may be the extent of authority given to the Louisville Chancery Court, or the object in conferring it, common

experience teaches us that to require a cash payment of $2,000 under a judicial sale of land used for agricultural purposes would ordinarily deter men from bidding who might be anxious to purchase the land offered for sale, and able to pay for it if given a reasonable time to prepare for doing so.

Moreover, considering the amount of money to be raised by the sale of the three tracts of land, upwards of $20,000, and that those who may be expected to bid at the sale will be farmers purchasing the land for agricultural purposes, we think, to require the residue of the purchase money paid in six and twelve months, is not a sale on reasonable credit within the meaning of the Civil Code, because it would, in our opinion, result in an unnecessary sacrifice of the property.

We think the chancellor erred in requiring any part of the purchase price of the land to be paid in cash on the day of sale, and in not giving a longer time for the payment of the balance. For we are satisfied that, as a general rule, a judicial sale of land used for agricultural purposes, as is the case of the three tracts here, can not be made, except upon reasonable credits, without injury to the debtor and often to the creditor.

Wherefore, the judgment is affirmed on the appeal of Isabella G. Johnson, and on the appeal of Willett it is reversed, and the cause remanded for further proceedings consistent with this opinion.