FARMERS' LOAN & TRUST CO. v. CENTRAL PARK, N. & E. R. R. CO. et al.

(Circuit Court, S. D. New York. September 17, 1910.)

STREET RAILROADS (§ 52*)—BONDS—PAYMENT OR PURCHASE.

Defendant railway company in 1872 issued a block of bonds payable in 30 years, and before maturity leased all its franchise property to another railway company, which subsequently became consolidated with the M. Company. In March, 1902, the M. Company executed a mortgage on all its property owned and leased to secure refunding bonds to replace bonds, including those in question, which were called "collateral bonds." The mortgage provided that after the maturity of any of the outstanding old bonds or collateral bonds, or within 12 months before such maturity, the railway company might sell refunding bonds in order to provide means to "purchase or pay" such outstanding old bonds or "to purchase" such collateral bonds as shall not have been delivered to the trustee and held by it under the mortgage and which have matured or are about to mature within 12 months, and that the trustee shall deliver to the railway company refunding bonds to the face amount of such outstanding old bonds or collateral bonds which have matured or are about to mature, provided that the par value of the refunding bonds so certified and delivered shall simultaneously be deposited in cash with the trustee in exchange therefor, and out of the cash so received by the trustee it shall on demand of the railway company and on delivery to the trustee of the outstanding old bonds or collateral bonds so paid or purchased by the railway company pay to the railway company a sum equal to the par value of the bonds so paid or purchased. Before the maturity of the collateral bonds, the directors of the M. Company requested the trustee to certify and deliver new refunding bonds to an amount equal to such 30-year collateral bonds outstanding on deposit with the trustee of an amount equal to the face of such refunding bonds in cash in exchange therefor, and directed the trustee on such deposit to pay $1,000 of the deposit for every $1,000 of the collateral bonds of the lessor company delivered to the trustee under the mortgage. *Held*, that as to the collateral bonds the refunding mortgage contemplated a purchase only, and not a payment of the bonds, so that a payment by the trustee out of the amount so deposited to the holders of the collateral bonds constituted a purchase thereof and not a payment and satisfaction of the bonds for the benefit of the lessor railway company.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 52.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Farmers' Loan & Trust Company against the Central Park, North & East River Railroad Company and others to foreclose a mortgage of the defendant railroad company referred to in the opinion as Central Park Company. The suit was brought while the property was in the actual custody of the court; jurisdiction not being disputed. Decree for complainant.

See, also, 175 Fed. 528.

Turner, Rolston & Horan, for complainant.

Thompson, Vanderpoel & Freedman, for defendant Central Park, N. & E. R. R. Co.

Masten & Nichols, for receivers Metropolitan St. Ry. Co.

Davies, Stone & Auerbach, for Guaranty Trust Co.

Byrne & Cutcheon, for Penn Steel Co. et al.

Bronson Winthrop, for Morton Trust Co.

LACOMBE, Circuit Judge. On December 1, 1872, the Central Park Company, in order to cancel and retire several prior issues of bonds, to pay certain other indebtedness, and to provide funds for further construction, etc., gave the Farmers' Loan & Trust Company, as trustee, the mortgage now in suit, covering all its franchises and property of every description, to secure the payment of $1,200,000 represented by an issue of 1,200 bonds of $1,000 each. These bonds, all of which were issued, were payable in 30 years, i. e., Dec. 1, 1902, and bore interest at the rate of 7 per cent. per annum, payable semiannually. The bonds were payable "at their office" in the city of New York; the context leaving it uncertain whether such "office" is that of the mortgagor or of the trustee. The validity of the bonds and mortgage is not in dispute. The bonds passed into the hands of many different holders for value. For some years the coupons were paid at the New Amsterdam Bank, but a short time before maturity of the bonds notice was given to all holders who came to the bank or elsewhere that they might present them to the Morton Trust Company to get their cash for their bonds and interest. All the bonds were there presented. Cash for the full amount, principal and interest, was paid to each holder by the Morton Trust Company, which thus came into possession of the entire issue. The fundamental question in this case is whether this transaction was a payment of the bonds or a purchase thereof.

The intervention of the Morton Trust Company as the disburser of this cash came about by reason of certain transactions hereinafter set forth.

In 1892 the Central Park Company leased all its franchises and property to the Metropolitan Crosstown Railway Company and the Houston, West Street & Pavonia Ferry Railroad Company, which last two companies with certain others in 1894 became consolidated into the Metropolitan Street Railway Company, hereinafter called the "Metropolitan." It will be more convenient to speak of the lease as if made directly to the Metropolitan. That company, itself owning many street surface railroads in Manhattan Island, leased many other railroads there located, thereby getting together a unitary railway system which included practically all surface lines. On March 21, 1902, it executed a mortgage covering all its railroad property, owned and

leased, which included this Central Park leasehold and also 3,000 shares (out of 18,000 shares) of stock of the latter company, which it then owned.

The situation at that time was this: There were bonds secured by mortgages falling due, in the near or remote future, upon lines owned by the Metropolitan and also bonds similarly secured on the various leased lines. If these were not provided for and default ensued, the unitary system might be destroyed by cutting out parts of it through sale under foreclosure. In order to provide for the preservation of the system and the financing of the obligations as they fell due, and also to provide $11,000,000 of new money for general betterments, etc., this mortgage securing an issue of $65,000,000 of bonds was executed to the Morton Trust Company as trustee. After providing for the issue of the $11,000,000 to obtain new money for the Metropolitan, the mortgage very carefully provided for the certification and disposition of bonds to take care of outstanding bonds. It first defines two classes of such bonds, viz., such as are liens on property owned by the Metropolitan, which are called "outstanding old bonds," and such as are liens on the property of lessor roads, which are called "collateral bonds." It also recites that payment of a large number of said outstanding old bonds and collateral bonds has been guaranteed by the Metropolitan. It then provides that, if the Metropolitan shall tender to the trustee any of said outstanding bonds or collateral bonds with all the unmatured coupons thereunto appertaining, the trustee shall in exchange therefor certify and deliver in exchange an equal number of bonds under this new mortgage. This method of disposing of outstanding bonds was not followed. As an alternative the mortgage provides as follows:

"At any time or times on or after the maturity of any of the outstanding old bonds, or collateral bonds, or within twelve months before such maturity, the railway company may sell refunding bonds in order to provide the means to purchase or pay such outstanding old bonds, or to purchase such collateral bonds, as shall not theretofore have been delivered to the trustee and held by it under this indenture, and which have matured, or about to mature within twelve months, and the trustee shall certify and deliver to the railway company, or upon its order, refunding bonds hereunder to a face amount equal to the face amount of such outstanding old bonds or collateral bonds which have matured, or about to mature within twelve months; provided that the par value of the refunding bonds so certified and delivered shall simultaneously be deposited in cash with the trustee in exchange therefor. Out of the cash so received by the trustee, it shall, on demand of the railway company and upon delivery to the trustee of the outstanding old bonds or collateral bonds so paid or purchased by the railway company, pay to the railway company a sum equal to the par amount of the bonds so paid or purchased."

There is a very plain and explicit distinction between the course to be pursued in relation to these two different classes of bonds. The "outstanding old bonds" are to be purchased or paid; the "collateral bonds" are to be purchased only. The reason for the distinction is manifest. Extinguishment of an "old bond" by payment would, by removing a prior lien, increase the value of the property mortgaged to the Morton Trust Company; extinguishment of a "collateral bond"

would inure solely to the benefit of the lessor company. There are also provisions providing for the cancellation, at the request of the Metropolitan, of outstanding old bonds acquired by the trustee; but there are no such provisions in relation to the cancellation of any collateral bonds acquired by the trustee, and the trustee was forbidden to cancel any bonds except as specifically provided. The mortgage also required that bonds "which shall be acquired by the trustee hereunder shall be stamped with the word 'Nonnegotiable,' held in trust for the purposes declared in the refunding mortgage of the Metropolitan Street Railway Company dated March 21, 1902, and (either with or without conversion into registered bonds at the option of the trustee) shall be held by the trustee as purchaser, as additional security for the payment of the bonds hereby secured."

The mortgage contains many other provisions which need not be recited. There is nowhere among them anything inconsistent with this carefully elaborated plan for purchasing collateral bonds at maturity with cash provided by the trustee through the sale of refunding bonds and keeping them alive as security for such new bonds. What took place as to the particular collateral bonds now in question (Central Park bonds due December 1, 1902) was as follows: On July 8, 1902, the board of directors of the Metropolitan passed a resolution requesting the Morton Trust Company, as trustee, to certify and deliver $1,200,000 face value of the new bonds under the mortgage, upon the deposit with said trust company of $1,200,000 in cash in exchange for such refunding bonds, and further requesting and directing the trust company upon such deposit in cash to pay $1,000 of the money so deposited for every $1,000 of the bonds (outstanding collateral bonds) of the Central Park Company, delivered to the said trust company as trustee under the said refunding mortgage. A great deal of testimony has been taken as to what subsequently took place, but the substance of it all is that the necessary amount of cash was furnished to the Morton Trust Company by new bondholders (under the Morton Trust mortgage) through the bankers who had underwritten the issue; that such cash was paid out to the individual holders of Central Park bonds upon the presentation of their holdings to the trustee; and that these bonds were stamped as provided for and have since been held by the trustee "as additional security" in accordance with the plan specifically prescribed, and they have never been canceled. The court is satisfied that what took place was what the parties to the refunding mortgage agreed should take place, and that these old Central Park bonds were not paid at maturity, but were acquired by the trustee by purchase from their holders. The last coupon on each bond was paid with money furnished by the Metropolitan Company, so the bonds only are now outstanding.

The terms of the lease by Central Park to Metropolitan have been discussed at great length in the briefs. This lease was included among the property mortgaged to the Morton Trust Company; but the present suit does not seek to foreclose any lien on that particular piece of property, and it would seem that its terms cannot be availed of to defeat the security created 20 years before upon which as purchaser of

the bonds thereby secured their present holder relies. It is concluded that these old bonds have never been paid, are still an outstanding obligation of the Central Park Company, and are secured by the mortgage now sought to be foreclosed.

Complainant may take the usual decree.