# CHARLESTON.

BROOMALL *et als. v.* NORTH AMERICAN STEEL CO.
and
MONAHAN *v.* NORTH AMERICAN STEEL CO. *et al.*

Submitted January 12, 1911.    Decided April 9, 1912.

1. CORPORATIONS—*Bonds*—*Bona Fide Holders.*

The Broomall Iron & Steel Co. gave a deed of trust upon its property to secure a bond issue of $50,000, and sold $30,000 of them, and deposited the remaining $20,000 as collateral to secure a loan. It then conveyed all its property to a newly formed corporation, The North American Steel Co., which assumed

70 W. Va.

to pay the bonds. The new corporation paid the debt secured by the $20,000 of bonds, and put them into circulation before they became due. HELD:

I.  That the new company, having rightfully acquired the bonds of the old company before they were due, could negotiate them.

II.  That in a suit by a holder of the bonds sold by the old company, to enforce their collection by a sale of the trust property, a *bona fide* holder of the bonds put into circulation by the new company, is entitled to equal protection with the holders of the bonds first sold.  (p. 594).

2.  SAME—*Bonds—Assignment.*

A *bona fide* holder of bonds, lawfully issued by a corporation, may pass good title to his assignee, without consideration.  (p. 595).

3.  SAME—*Bona Fide Holders.*

A stockholder in a corporation may lawfully acquire and hold its bonds, and is entitled to equal protection with other holders of like bonds; and, in the absence of proof of bad faith, he is presumed to be a *bona fide* holder.  (p. 595).

Appeal from Circuit Court, Barbour County.

Bill by Grant C. Broomall and others against the North American Steel Company, and by H. A. Monahan who sues for the use, etc., against the North American Steel Company and others. The suits were consolidated. Decree for complainants, and the North American Steel Company and James R. Harris appeal.

*Modified and Affirmed.*

*Avis & Hardy,* and *J. Hop Woods* and *J. B. Ware,* for appellants.

*Wm. T. George,* for appellee, H. A. Monahan. *Blue & Dayton,* for other appellees.

WILLIAMS, JUDGE:

The Broomall Iron & Steel Company, a West Virginia corporation, executed a deed of trust upon its property in Barbour county, West Virginia, to secure a $50,000 bond issue. Bonds amounting to $30,000 were purchased by various individuals, and the remaining $20,000 were deposited by said company as

collateral security for a loan made to it by a bank in the city of Baltimore. Thereafter another West Virginia corporation, the North American Steel Company, was formed, and on the 13th of April, 1906, the old company conveyed all its property to the new company which, in consideration therefor, assumed the payment of said bonds. Shortly before the conveyance to the new company, Henry Koehler, Jr., one of its promoters, and later one of its largest stockholders, paid the debt held by the bank of Baltimore, and took up the $20,000 of bonds held by it as collateral. On re-payment to him of the money advanced to pay the bank, Koehler turned the bonds over to the new company, and it then placed them with the Commonwealth Trust Company, of St. Louis, Missouri, to secure a debt which the new company owed it. That debt was not paid, and the Commonwealth Trust Company sold the bonds to James C. Harvey, and he assigned them to James R. Harris.

On the 8th of January, 1906, the promoters of the new company entered into a written contract with the old company and its stockholders, whereby two of its stockholders, Grant C. Broomall and Hart Hatch, were to be protected in respect to a certain secret process for the manufacture of planished steel, which the contract provided should be used by the new company. Broomall and Hatch were also to receive a certain portion of the stock of the new company, and were to be employed by it, for a period of not less than five years, at a stipulated salary per month. This contract was made binding on the new company to be formed.

In two or three years after the new company was formed, it became seriously embarrassed, financially, and ceased to operate its plant, or to carry on business, and failed to pay the interest on the aforesaid bonds; whereupon, by the terms of the trust deed securing them, both principal and interest became payable.

Broomall and Hatch then brought a suit to compel the company to operate its plant, and to carry out the agreement made by its promoters for their benefit. Shortly thereafter, H. C. Monahan, a holder of some of the $30,000 of bonds that had been sold by the old company, brought another suit, on behalf of himself and all the other bond holders, alleging the insolvency of

the company and its failure to pay interest on the bonds, and prayed for the appointment of a receiver to take charge of the company's property, and for a sale of the same, for the purpose of paying off the bonds in accordance with the provision in the deed of trust. These two suits were consolidated, and the causes were referred to a commissioner to state, and report to court, an account of the liens upon the company's property, and their priorities. The two causes were heard together, on the commissioner's report and exceptions thereto, and a decree was pronounced on the 29th of July, 1909, holding that, by virtue of the provisions in the deed of trust, the failure to pay the interest caused the whole of principal and interest of the bond issue to become due and payable, and determined the order of the liens upon the property, and decreed that it be sold. It was sold, and D. A. Nease, one of the promoters of the North American Steel Company, purchased it at the price of $50,000. Nease paid only $1,000 of the $12,500 cash payment, and a decree was entered confirming his purchase, on condition that he should comply with the terms of sale by the 1st of December, 1909. Whether he has complied with the terms of sale or not, does not appear; nor is that fact material to the decision of the question presented by this appeal. The North American Steel Company and James R. Harris appealed from that decree.

The principal error assigned, and the only one argued by counsel in their briefs is, that the decree erroneously subordinated the lien of the $25,400 of bonds and their interest, held by said Harris, to the lien of the holders of the remaining portion of the original $50,000 bond issue and the interest thereon. That assignment is well taken. It is not alleged in the bill, in either of the suits, that the $20,000 of bonds which the old company had used as collateral security for a loan, was fraudulently acquired, or was fraudulently held by said Harris. On the contrary, Monahan, who sues on behalf of himself and all other holders of any of said bonds, avers in his bill that the whole of the bond issue of $50,000 was a valid, subsisting obligation, outstanding and unpaid. He made this averment with full knowledge of the manner in which the old company had used the bonds. Indeed, it clearly appears from a reading of the bill that, plaintiff brought the suit as much for the benefit

of the holders of the $20,000 of bonds as for himself, or for any other holder of any portion of the $30,000 of bonds. Moreover, he prays, "that the proceeds of the sale of the said property be applied as in the said deed of trust directed until all of said bonds are paid." In view of the averments, and prayer of plaintiff's bill, neither he, nor any other bond holder who came into the suit as a co-plaintiff, would have a right to impeach the title of any other bondholder. It is not questioned that the $20,000 of bonds were properly and lawfully used by the North American Steel Company, to secure a debt which it owed to the Commonwealth Trust Company, and that, by that means, they got into circulation, and are not paid. At that time the bonds were not payable, and the new company had a right to negotiate them. 3 Cook Corp. (6th ed.) sec. 262; *Pruyne* v. *Adams Furniture Co.,* 155 N. Y. 629; *Atwood* v. *Railroad Co.,* 85 Va. 966. And the holders of other bonds of the same issue, previously purchased, had no right to complain, for the lien of all the bonds existed from the recordation of the deed of trust, whether issued then or later. "All outstanding bonds in *bona fide* hands are conclusively presumed to have been issued on the date of the recording of the mortgage." 3 Cook Corp. (6th. ed.) sec. 764; *Central Trust Co.* v. *Bartlett,* 57 N. J. L. 206; *Caylus* v. *Railroad Co.,* 76 N. Y. 609; *Nelson* v. *Railroad Co.,* 8 Am. Ry. Rep. 82.

It is proven, and not denied or even controverted, that James C. Harvey, who purchased the bonds from the Commonwealth Trust Company, paid full value for them. He had a right to purchase them. Could he not then, even by gift, confer title upon his indorsee, good against the maker and the guarantor? We know of no rule of law forbidding his doing so. So long as the bonds are not held by the company itself, that guaranteed their payment, or by some person for its benefit, having been properly put into circulation, it matters not to the other bondholders who owns them, for they purchased subject to the right of the old company, or its successor, the new company, to dispose of the whole of the issue. It is not even contended in brief of counsel that Harris holds the bonds for the new company. But counsel do intimate that he holds them for Adolphus Busch, who is a large stockholder in the company, and who is

individually liable as its indorser for a large amount of its debts. There is no evidence to support that view, but it is argued that, because Harris is general manager for the Anheuser Busch Brewing Association in which Adolphus Busch is interested, because he is secretary of the new company, and because he refused to answer questions before the commissioner in relation to the consideration paid by him for the bonds, the commissioner could infer that he was not a *bona fide* holder. But Harris testified that he is the absolute and unqualified owner of the bonds, and he produced a written assignment from Harvey for them. If Harvey was a *bona fide* holder, it mattered not then, as between Harris and the other bondholders, whether he paid anything for them or not. But even if it had been proven, that he purchased them with money supplied by Adolphus Busch and held them in trust for him, that would not invalidate them. Busch's relation to the company as stockholder is not inconsistent with his rights as a creditor. 1 Cook Corp. (6th ed.) sec. 11. It is shown that he was liable, as indorser for the company, for a large amount of its indebtedness, and that it is insolvent. It is no doubt true that, if the $20,000 of bonds were really owned by the new company, they should be treated as paid, and cancelled; and if the court was of the opinion that Harris held the bonds for the benefit of the company, it should not have allowed them as a lien in favor of any one, for to do so would be to protect an insolvent debtor against its creditors. But there is nothing in the record from which it could even be inferred that Harris held the bonds for the company. If the court believed that Harris was not a *bona fide* holder, we do not see on what theory it gave the bonds which he held any place whatever, as a lien against the property. Because, if entitled to be allowed at all, they should have been given equal dignity with the other bonds. They were a part of the same issue, and all protected alike.

The decree, entered on the 29th of July, 1909, in so far as it decreed the debt of J. R. Harris to constitute a distinct lien of the third class, will be corrected by an order entered here, so as to make the $25,400 of bonds and interest decreed to him a lien upon the property conveyed by the deed of trust hereinbefore mentioned, second in order of priority along with the liens

of the holders of the remainder of the $50,000 bond issue, and to be paid ratably with them out of the proceeds of sale, and, as so modified, the decree will be affirmed, with costs in favor of said J. R. Harris, and the cause will be remanded for further proceedings.

*Modified and Affirmed.*