## AS TO THE PURCHASE OF BONDS OF A MUNICIPALITY BY ITS SINKING FUND TRUSTEES.

Court of Appeals for Cuyahoga County.

CITY OF CLEVELAND, BY JOHN N. STOCKWELL, DIRECTOR OF LAW, v. BAKER ET AL.

Decided, December 17, 1914.

*Municipal Corporations—Bonds Purchased by Sinking Fund Trustees Are Not Retired—But, Like Other Securities, Become Assets in the Hands of Said Trustees—Bonds May be Sold by Them Below Par, When—Where an Act is Legal its Motive is Immaterial, When —Motion by Defendant for Judgment—Sections 3922 and 4514, et seq.*

1. A motion for judgment on the pleadings being made by the defendants, the defendants can not be helped by the denials in the answer or by affirmative allegations in the answer that are denied by the reply.

2. Sections 3922 and 4514, General Code, evince an intention upon the part of the Legislature to encourage the investment of funds in the hands of the sinking fund trustees, or commission in the bonds of that municipality, and the purchase of such bonds by the sinking fund trustees, or commission, does not in legal effect amount to a retirement of such bonds, but such bonds become assets in the hands of such trustees, or commission, the same as other securities purchased by them.

3. Section 4517, General Code, confers full power upon the sinking fund trustees, or commission, to protect the credit of the municipality by giving them unlimited power to use the money and securities in their possession for the purpose, and such power is not limited by either Sections 3923, 3924 or 4522, General Code.

4. Where an act proposed to be done is legal, the motive that prompts the act is not material.

Heard on appeal.

*John N. Stockwell,* Director of Law, and *Albert H. Weed,* for plaintiff.

*J. C. Hostetler,* Assistant City Solicitor, and *Henry, Fauver, McGraw & Thomsen,* contra.

CHITTENDEN, J.

This cause was submitted on a motion made by the defendants for judgment in their favor upon the pleadings. The substance of the pleadings, so far as need be stated for the purposes of this opinion, is as follows: Newton D. Baker, Thomas Coughlin and William F. Thompson, as mayor, director of finance and president of the council, respectively, of the city of Cleveland, constitute the sinking fund commission of said city, and on the 22d day of October, 1914, said commission duly adopted the following resolution:

"*Resolved*, That for the purpose of accumulating funds to meet the obligations of the sinking fund, there be offered for sale bonds owned by the sinking fund commission, in the amount and of the description as follows:

"Five hundred thousand ($500,000) dollars 4% city of Cleveland electric light coupon bonds, issued September 4th, 1912, maturing April 1st, 1947, and drawing interest from October 1st, 1914, and numbered from 50236 to 50735, both numbers inclusive.

"*And be it further Resolved*, That the assistant secretary be and he is hereby authorized and directed to write various bond brokers and banks situated in the state of Ohio, as follows:

"Sealed bids will be received at the office of the sinking fund commission, room 507, city hall, Cleveland, Ohio, until 12 o'clock noon, eastern standard time, on Tuesday, October 27th, 1914, for the purchase of:

"Five hundred thousand ($500,000) dollars four (4) per cent. city of Cleveland electric light coupon bonds, issued September 4th, 1912, maturing April 1st, 1947, and drawing interest from October 1st, 1914.

"These bonds are owned by the sinking fund commission, Cleveland, Ohio, the principal and interest being payable at the American Exchange National Bank in New York City, interest payable semi-annually on April 1st and October 1st of each year.

"These bonds were purchased and paid for by the sinking fund commission on September 4th, 1912, and therefore are tax free in the state of Ohio.

"For the purpose of accumulating funds to meet the obligations of the sinking fund commission, Cleveland, Ohio, these bonds are being offered to the public. The validity of these bonds has been approved by the Supreme Court of the state of Ohio.

"A certified or cashier's check drawn on some solvent bank, other than the one bidding, in the amount of 2% of the total amount bid for, and made payable to the order of the sinking fund commission, Cleveland, Ohio, must accompany each bid.

"The sinking fund commission reserves the right to accept any or reject all bids.

"Roll Call: Yeas, Baker, Coughlin, Thompson. Nays, None."

Pursuant to the terms of this resolution bids were solicited from various bond brokers and banks situated in the state of Ohio, by a circular letter, and on October 27, 1914, the bids of the prospective purchasers were opened, and it was found by the sinking fund commission that the joint bid of the defendants, Hayden, Miller & Company, C. E. Denison & Company and Otis & Company, was the highest and best bid for the bonds, and thereupon on the same day the sinking fund commission made an order as follows:

"That the five hundred thousand dollar ($500,000) four (4) per cent. electric light coupon bonds be sold and the same be awarded to Hayden, Miller & Company, C. E. Denison & Company and Otis & Company, at their bid of four hundred and eighty-nine thousand and fifty dollars ($489,050), plus accrued interest to the date of delivery."

The plaintiffs allege that the bonds so ordered sold were originally acquired by the board of sinking fund trustees of the city of Cleveland, which was the predecessor of the sinking fund commission, on October 12, 1912, and that since that date said bonds have been held by the sinking fund trustees and the sinking fund commission as an investment of its funds as provided by law. It is averred that the proposed sale is illegal and void for the following reasons:

*First.* That the sinking fund commission has no authority or power to sell any bonds of the city of Cleveland purchased by such commission for the reason that the purchase of the bonds of the city of Cleveland by the sinking fund commission is in legal effect a retirement of such bonds.

*Second.* That thirty days' notice of the proposed sale by publication, as required by law, was not made.

*Third.* That the sinking fund commission exceeded its authority in attempting to authorize a sale of such bonds at a price less than their par value, to-wit, 97.81 per cent. of the par value.

*Fourth.* That the recitation in the resolution setting forth that the bonds were to be sold for the purpose of accumulating funds to meet the obligation of the sinking fund does not state the real purpose of the commission in offering the bonds for sale. It is alleged that the bonds are to be sold for the purpose of enabling the sinking fund commission to raise money to be used with other money in its possession for the purpose of, first, meeting such maturing obligations of the city of Cleveland as the sinking fund commission shall in the future determine to meet, and, second, to pay for such bonds of the city of Cleveland as the sinking fund commission shall in the future decide. to purchase.

It is· alleged that if the proposed sale is made it will result in a loss to the sinking fund of the city of $10,950, and that the sale of the bonds at 97.81 cents on the dollar is in violation of the provisions of law with reference to the care and maintenance of the funds in the control of the commission, and further that such sale will tend to injure the good faith and credit of the city. Plaintiff asks that an injunction be granted restraining the defendants from consummating the sale and transfer of the bonds, and for a decree declaring the agreement to sell and transfer such bonds to be void and of no effect.

The defendants in their answers admit the allegations of the petition, in so far as they refer to the acquiring by the sinking fund commission of the bonds in question and the several steps taken by the sinking fund commission to effect a sale of the bonds, and admit the proposal to sell the bonds as set forth in the petition. They deny the other allegations set forth in the petition. It is further alleged in the answers that the bonds in question are to be sold to meet the obligations of the city of Cleveland, as set forth in the resolution of October 22, 1914; that the bonds were acquired by the sinking fund commission or its predecessor in office, on or about September 12, 1912, as

an investment of the funds of the sinking fund commission, and that such bonds are non-taxable securities; that at the time they were purchased, to-wit, on September 12, 1912, four per cent. was a fair market rate for investments of this character, but that since the 1st day of August, 1914, the market value of said bonds, as well as of all securities, municipal, state and national, has materially declined. They allege that the bonds constitute one of the assets of the sinking fund commission in which its funds are invested, and that said commission proposes to sell the bonds at the highest price obtainable therefor. They aver that said bonds, under existing financial conditions, are worth as assets of the commission such amount, and such amount only, as they are proposed to be sold for under the order of sale of October 27, 1914. They allege that no loss whatever will be caused the city by reason of the sale of the bonds at the price proposed, but that any loss is due to the fact that the market value of the bonds has depreciated by reason of financial disturbances incident to the war in Europe, which has generally decreased the market value of all securities. The defendants specifically deny that the bonds described are to be sold for any purpose other than that set forth in the resolution of October 22, 1914.

The plaintiff by reply denies that the market value of the bonds has materially declined; denies that the price at which the sinking fund commission proposes to sell said bonds is the highest price obtainable therefor; denies that the sale of the bonds is at the highest price obtainable therefor; and avers that if such bonds were sold as required by law, to the highest bidder, at open and public sale, after thirty days' notice in at least two newspapers of general circulation in Cuyahoga county, setting forth the nature, amount, rate of interest and length of time the bonds have to run, the same would bring a price equal to the face of said bonds and accrued interest thereon.

A motion for judgment on the pleadings being made by the defendants, the defendants can not be helped by the denials in the answer or by affirmative allegations in the answer that are denied by the reply.

Section 4514, General Code, requires the trustees of the sinking fund to invest the moneys received by them in bonds of the United States, the state of Ohio, or of any municipal corporation, school, township or county bonds, in such state, and to hold in reserve only such sums as may be needed to carry out the purposes of their trust.

Section 3922, General Code, directs that when a municipal corporation issues its bonds it shall first offer them at par and accrued interest to the trustees of the sinking fund, in their official capacity, and then it provides for offering them to certain other officials in case the trustees of the sinking fund decline to take them. The statutory duty thus placed upon the municipality to first offer its bonds to the trustees of the sinking fund indicates very clearly an intent upon the part of the Legislature to encourage the investment of the funds in the hands of the sinking fund trustees in the bonds of that municipality. It was by virtue of the two sections of the General Code just cited that the trustees of the sinking fund of the city of Cleveland came into the ownership and possession of the bonds in controversy.

Section 4517, General Code, requires the trustees of the sinking fund to have charge of and provide for the payment of all bonds issued by the corporation, the interest maturing thereon and the payment of all final judgments against the corporation, except in condemnation of property cases. This section imposes a clear and positive duty upon the trustees of the sinking fund to be prepared to pay the obligations of the municipality, whether arising out of a previous issue of bonds or by reason of a final judgment against the city. Upon the faithful performance of this duty by such trustees depends the financial credit of the city. The same section which imposes this duty further provides that "for the satisfaction of any obligation under their supervision, the trustees of the sinking fund may sell or use any of the securities or money in their possession." This clause of Section 4517 confers a very broad power and discretion upon the trustees, a power and discretion that should be sufficiently broad to enable them to faithfully perform the duty imposed upon the trustees by the first clause of the same section.

It is not contended by the plaintiffs that the sinking fund commission is precluded from selling in good faith, without any restrictions, any of the securities of the sinking fund other than bonds issued by the municipality itself; but it is contended that bonds of the municipality held by the sinking fund commission can not be so sold. It is alleged in the petition and is said by counsel for plaintiff in argument that when the bonds of the city are purchased by the sinking fund commission, such purchase is in legal effect a retirement of such bonds. If this be true, it would follow that if the sinking fund commission invested its funds in no other securities than bonds issued by the municipality, it would have no assets that could be made available for the satisfaction of judgments or other obligations of the city under the supervision of the sinking fund commission. If bonds of the municipality that were purchased by the sinking fund trustees thereby became retired there would be no purpose in the issuing of the bonds at all, for the improvement for which they were issued might as well be paid for by an appropriation from the sinking fund in the first instance. This method of procedure would obviously preclude the accumulation of a sinking fund and defeat the entire purpose of establishing such fund. This is a situation that could not have failed to present itself to the minds of the Legislature in framing the law as it did. Of course, the purpose of establishing a sinking fund is inconsistent with the proposition that improvements might be paid for in the first instance by an appropriation from that fund. If the legal effect of purchasing the bonds of a municipality by its sinking fund commission is to retire said bonds, then they should be canceled, for they would be the same as bonds that had never been issued and there is no statutory authority for the sinking fund commission to issue bonds of the municipality in the first instance. We therefore find that the purchase of the bonds of the municipality by its sinking fund trustees or commission does not in legal effect amount to a retirement of such bonds. Such bonds when purchased by the sinking fund commission become assets in the hands of such commission the same as other securities purchased by it.

The only authority of the sinking fund trustees to issue bonds is conferred by Section 4520, General Code, which provides that for the purpose of refunding, renewing or extending the bonded debt at a lower rate of interest, or for certain other special purposes, the trustees may issue bonds of the corporation as provided in that section. It is provided by Section 4522, General Code, that such bonds issued by the trustees of the sinking fund "shall be sold as provided by law for the sale of bonds by a municipal corporation." The provisions of law for the sale of bonds by a municipal corporation are found in Sections 3923, 3924 and 3926, General Code, which sections provide, in substance, that such bonds shall not be sold for less than their par value and that they shall be sold to the highest and best bidder after thirty days' notice in two newspapers, etc., as set forth in those sections.

It is alleged in the petition and argued that the commission has no authority to sell such bonds for less than their par value. Plaintiff claims that the last clause of Section 3923, General Code, which reads, "in no case shall the bonds of the corporation be sold for less than their par value, nor shall such bonds when so held for the benefit of such sinking fund or debts, be sold, except when necessary to meet the requirements of such fund or debt," precludes a sale by the commission at less than par. Let it be borne in mind that this clause—in fact, this section—is a part of Section 97 of the municipal code, passed in 1902 (96 O. L., 52), and relates to the issuing and selling of bonds by a municipality. The limitation that the bonds shall in no case be sold for less than their par value plainly applies to and affects the initial issue and sale of bonds. It follows the provision that the municipality shall first offer the bonds to the trustees of the sinking fund and then to certain other officers (now Section 3922, General Code), and the provision that only after the refusal of all such officers to take the bonds shall they be advertised for public sale. The limitation that the bonds when held for the benefit of the sinking fund or debts shall not be sold except when necessary to meet the requirements of the fund or debts, seems to be distinct and apart from that which

provides that the bonds shall not be sold for less than their par value. The only limitation imposed when the bonds are held for the benefit of the sinking fund is that they shall not be sold except when necessary to meet the requirements of such fund or debt.

We are unable to find that Section 3923, General Code, controls or limits the power conferred upon the sinking fund trustees by Section 4517, General Code, to use or sell any of the securities in their possession for the satisfaction of any obligation under their supervision. It is entirely plain that Section 4522, General Code, is no limitation upon Section 4517, General Code, because, as already noted, that section is dealing only with the issuing of refunding bonds by the trustees. Sections 4517 and 4522, General Code, were Sections 110 and 115, respectively, of the municipal code. It is significant, we think, that Section 110 of the municipal code conferred upon the trustees of the sinking fund the apparently unlimited power to sell or use any of the securities or money in their possession for the satisfaction of any obligation under their supervision, and that Section 115 provided that in the issuing of refunding bonds they should be sold "as provided in Section 97 of this act," being now amended so as to provide that they "shall be sold as provided by law for the sale of bonds by a municipal corporation." The fact that in the same act a limitation was put upon the sale of refunding bonds issued by the trustees of the sinking fund and not upon the sale of other securities in their possession for the satisfaction of any obligation under their supervision, indicates that the Legislature intended that no limitation should be imposed in the latter case, and that they should have the fullest power to protect the credit of the city by the unlimited authority to use the money and securities in their possession for that purpose. The case of *City of Cincinnati et al* v. *Guckenberger*, 60 Ohio St., 353, is not in conflict with this conclusion.

It follows from what has been said that the sinking fund commission is not required to publish notice of the sale of the bonds for thirty days as required by statute in the case of the sale of bonds by a municipality, and that it is not precluded from selling the bonds at less than par.

It is said that this construction of the law would open the door to fraud; that if the city found it could not sell its bonds at par as required by law, they might be taken over by the sinking fund commission and by that commission sold below par. If such a state of facts could be shown to exist it would indicate fraud and an attempt to circumvent the provisions of the law providing for the sale of bonds by a municipality.

Every officer is expected and required to perform his official duties with integrity. Section 3923, General Code, reading, "only after the refusal of all such officers to take all or any of such bonds at par and interest, *bona fide* for and to be held for the benefit of such corporation, sinking fund or debt," etc., is a declaration that the sinking fund commission must act in good faith for the benefit of the city sinking fund in the purchase of the municipal bonds.

If facts were alleged showing an attempt on the part of this city and its sinking fund commission to circumvent the law in respect to the sale of bonds by the city, the power of a court of equity might be invoked to prevent the consummation of such a sale. No such facts are alleged to exist in the case under consideration.

It is alleged and argued that the recitation in the resolution adopted by the sinking fund commission on October 22, that for the purpose of accumulating funds to meet the obligations of the sinking fund there be offered for sale bonds owned by the sinking fund commission, does not state the real purpose of the commission in offering the bonds for sale. It is further alleged that when the bonds are sold the sinking fund commission will use the funds, at least in part, for a different purpose. We scarcely need cite authorities to the effect that if the act proposed to be done is legal the motive which prompts the act is not material. We find that the sinking fund commission is empowered to sell its assets, to-wit, the bonds in question, for the purpose of meeting the obligations of the sinking fund as proposed. If, after obtaining the proceeds of this sale, it should attempt to make an unlawful use of the funds, it would then be the proper time to proceed to restrain a wrongful disposition of such funds.

The motion of the defendant is granted and a decree will be entered accordingly.

Petition dismissed.

KINKADE, J., and RICHARDS, J., concur.