# Fidelity & Columbia Trust Co. et al. v. Louisville Railway Company.

(Decided April 23, 1935.)

RICHARD PRIEST DIETZMAN, SQUIRE R. OGDEN and F. M. SACKETT for appellants.

JOHN E. TARRANT for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This action was brought under the Declaratory Judgment Act (Civil Code Prac. secs. 639a-1 to 639a-12)

by the Louisville Railway Company to test the validity of a proposed refinancing plan whereby it will pay at maturity, on July 1, 1935, $1,000,000 of its first mortgage bonds and, with the consent of the owners, extend the maturity of the remaining $2,000,000 of those bonds to January 1, 1940.

The railway company has outstanding three classes of bonds, referred to in the record as first mortgage bonds, second mortgage bonds, and general mortgage bonds. On July 1, 1890, it issued $6,000,000 of 5 per cent. bonds secured by a mortgage upon all of its property. This indebtedness matured July 1, 1930, when the railway company retired $3,000,000 of the bonds and secured an extension of the maturity of the remainder of first mortgage bonds to July 1, 1935, at an interest rate of 6½ per cent. per annum, payable semiannually. There are now outstanding first mortgage bonds in the aggregate principal amount of $3,000,000. On March 1, 1900, the railway company issued $2,000,000 of second mortgage 4½ per cent. bonds secured by a second mortgage of that date. All of these bonds which mature March 1, 1940, are now outstanding. On February 1, 1910, the railway company executed a mortgage to secure the payment of an issue of 5 per cent. forty-year bonds. The amount authorized was $20,000,000 and the amount of these bonds referred to in the record as general mortgage bonds now issued and outstanding is $7,170,000.

Under the proposed plan of refinancing, the railway company, on or before July 1, 1935, will retire and cancel $1,000,000 of the first mortgage bonds, and, with the consent of the owners, the maturity date of the remaining $2,000,000 of this issue of bonds will be extended to January 1, 1940, and the bonds will bear interest from July 1, 1935, at the rate of 5¼ per cent. per anum, payable semiannually. To secure the payment of the ¼ per cent. additional interest obligation and other obligations assumed by the railway company, a supplemental mortgage has been executed.

The Fidelity & Columbia Trust Company is the trustee under the first mortgage and the Louisville Trust Company is the trustee under the second mortgage and the general mortgage. The railway company has entered into an agreement with the Louisville Trust Company whereby the trust company will, on July 1, 1935, purchase and deposit for extension first mortgage bonds

sufficient in amount to cause $2,000,000 of such bonds to be deposited and extended provided that the amount necessary to be purchased by the trust company for such purposes does not exceed $500,000. The agreement further provides that the railway company will buy from the Louisville Trust Company the bonds purchased by the trust company under the agreement and pay for them by giving the trust company its notes bearing interest at the rate of 5 per cent. per annum payable semi-annually in a principal sum equal to the face value of the bonds purchased and extended by the Louisville Trust Company. The bonds will be redelivered to the Louisville Trust Company as collateral security for the payment of the notes. The supplemental mortgage provides that when the debt to the Louisville Trust Company has been paid and the extended first mortgage bonds have been returned to the railway company, they shall be held in the treasury of the railway company as existing first mortgage bonds which may be sold from time to time to raise funds when it shall acquire additional rolling stock, equipment, or property necessary for its operation, and that such additional property shall be subject to the lien of the mortgages securing the extended first mortgage bonds. Holders of the various classes of bonds are parties to this action in representative capacities.

In the prayer of its petition the railway company asked for a declaration of the rights of the parties in respect to the following questions: (1) Will the extension of the maturity of $2,000,000 of its first mortgage bonds instead of payment thereof when due enable the owners of second mortgage bonds or general mortgage bonds to precipitate such bonds or enforce the lien to secure their payment? (2) Will the purchase by the railway company from the Louisville Trust Company of first mortgage bonds, after their maturity has been extended, constitute an extinguishment of those bonds? and (3) Is the railway company an existing corporation? The circuit court answered questions 1 and 2 in the negative and question 3 in the affirmative. The trustees under the three mortgages and the bondholders have appealed.

The first question has heretofore been before this court in the case of Commonwealth Life Insurance Company v. Louisville Railway Company, 234 Ky. 802, 29 S. W. (2d) 552, 556, and the judgment of the circuit

court is in acordance with the decision in that case. The first mortgage bonds matured on July 1, 1930, and before the maturity date the railway company adopted a refinancing plan whereby it was proposed to retire $3,-000,000 of the bonds at maturity, and, with the consent of the owners of the remaining bonds, to extend their maturity date to July 1, 1935. The question whether the failure to pay at maturity all the bonds secured by the first mortgage would constitute a default under the terms of either of the subsequent mortgages was squarely presented in the Commonwealth Life Insurance Company Case. After quoting certain provisions of the third mortgage relating to default, the court, in its opinion, said:

"An agreement between a mortgagee and mortgagor for an extension of time for the payment of the indebtedness secured by the mortgage based on a valid consideration is binding betwen the parties and as against third parties whose rights are subordinate to those of the principal creditor. American Securities Co. v. Goldsberry, 69 Fla. 104, 67 So. 862, 1 A. L. R. 15. If the party to whom payment is due and who possesses the right to waive payment agrees to a postponement of the date of payment, there is no default in any real sense of the word. Arnot v. Union Salt Co., 186 N. Y. 501, 79 N. E. 719; DeGroot v. McCotter, 19 N. J. Eq. 531.

"Holders of subsequent securities take them subject to the rights of the parties with superior equities and one of those rights recognized by the law is the undoubted privilege of postponing payment. The mere extension of the time of payment of prior debts in no way impairs the security of subsequent secured creditors, and the right of the parties holding prior liens to make extensions is one of the conditions to which a holder of subsequent securities is necessarily subject. First National Bank v. Citizens' State Bank, 11 Wyo. 32, 70 P. 726, 100 Am. St. Rep. 925. In the case of Willett v. Johnson, 84 Ky. 411, 1 S. W. 674, 8 Ky. Law Rep. 398, to which reference was made at the oral argument, it was held that a contract between a mortgagor and the mortgagee, extending the time of payment of mortgage debts, coupled with a compounding of interest, could not be enforced so as to prejudice the junior lienholders; but the prior

lien lost none of its validity, except to the extent of the compound interest. The principle upon which that case is predicated is respected in the proposed plan by subordinating any lien for the additional interest allowed on the extended indebtedness to the lien of the junior mortgages. Since the amendment to the Civil Code of .Practice [section 694] by the Act of March ———, 1916 [chapter 105, p. 656] the holder of a junior lien cannot be prejudiced by postponing the maturity of a senior mortgage, even beyond the due date of the junior lien, for the reason that the right to enforce junior liens, subject to unmatured prior ones, is expressly authorized by the amendment. The junior lienholder may sue at any time his debt may be due and his creditor found in default. The enforcement of his rights are subject to the superior lien, but need not be delayed until the latter is due. It is obvious that no default in payment of the debts can result from the consummation of the plan contemplated in this instance. The opposite purpose actuated the whole enterprise. It was designed to obviate any default and to preserve the rights of the bondholders in the hope that time may work to the advantage of all concerned.''

That case is conclusive of the first question presented. The rights of the junior lienholders are protected with the same meticulous care in the proposed refinancing plan as they were in the plan approved in the Commonwealth Life Insurance Company Case.

The second question also was answered correctly by the circuit court. The refinancing plan provides that the Louisville Railway Company shall purchase its first mortgage bonds from the Louisville Trust Company after the maturity date has been extended to January 1, 1940, and that it will pay for them by executing a note to the Louisville Trust Company and pledging the bonds with the trust company to secure the payment of the purchase-money notes. The plan further contemplates the reissuance of these bonds by the railway company for certain purposes after the pledge to the Louisville Trust Company has been satisfied. The supplemental mortgage and the agreement between the railway company and the Louisville Trust Company evidence an intention on the part of the railway company to keep the bonds alive and to reissue them if necessary. The rule

recognized without exception by American courts is that a corporation may purchase its own bonds and re-issue them where there is a manifest intention to keep them alive. In other words, the purchase by a corporation of its own bonds under such conditions does not operate as an extinguishment of the debt. The English rule was contrary to the American rule until changed by an act of Parliament in 1907. In City National Bank of Paducah v. Exchange Bank of Mayfield, 254 Ky. 579, 72 S. W. (2d) 1, notes secured by purchase-money lien were paid by the maker after maturity. Later he attempted to reissue the notes and it was held that the sale and delivery of them to the maker, after maturity, operated to extinguish them. Here, however, the Louisville Railway Company proposes to purchase its bonds before maturity with the intention expressed in the supplemental mortgage and in the agreement with the Louisville Trust Company to keep them alive and to reissue them. The rule under such circumstances is thus stated in Barry v. Missouri, K. & T. Ry. Co. (C. C.) 34 F. 829, 833:

> "There is no principle in the law of corporations or of mortgaes which forbids a corporation that has issued a series of mortgage bonds from purchasing part of them back, and reissuing them again before their maturity, when the financial interests of the corporation will be thereby promoted, unless the organic law of the corporation prohibits the exercise of such a power."

In American Brake Shoe & Foundry Co. v. New York Railways Co. (D. C.) 277 F. 261, 282, the railway company purchased a large amount of its mortgage bonds which for a time were held in its treasury. Later they were pledged with a bank to secure a loan. The question as to whether or not the bonds had been extinguished arose, and it was held that a corporation could purchase its bonds and reissue them if an intention to keep them alive was manifested. The following from Jones on Corporate Bonds and Mortgages was quoted with approval:

> "Sec. 325. A company may purchase its own bonds as an investment and reissue them. If the facts show that there was no intention of paying the bonds, but they were regarded and reported by the company as still outstanding, they are valid in the

hands of a subsequent purchaser and are secured by the lien of the mortgage."

Other cases to the same effect are: Claflin v. South Carolina R. Co. (C. C.) 8 F. 118; Westinghouse Electric & Mfg. Co. v. Brooklyn R. T. Co. (D. C.) 288 F. 221; Farmers' Loan & Trust Co. v. Central Park, N. & E. R. Co. (C. C.) 181 F. 595; Id. (C. C. A.) 193 F. 963; Gibbes v. Greenville & Charleston R. Co., 13 S. C. 228; In re Fifty-Four First Mortgage Bonds, 15 S. C. 304; Pruyne v. Adams Furniture & Mfg. Co., 92 Hun, 214, 36 N. Y. S. 361; Broomall v. N. A. Steel Co., 70 W. Va. 591, 74 S. E. 863; In re Indiana Trust Co. (Ind. App.) 135 N. E. 807; Elser v. City of Ft. Worth (Tex. Civ. App.) 27 S. W. 739; City of Cleveland v. Baker, 4 Ohio App. 68. The text-writers, basing their text on these cases, have uniformly stated the rule to be that the purchase by a corporation of its own bonds before maturity with a plainly evidenced intention to keep them alive and reissue them does not operate as an extinguishment of such bonds. Thompson on Corporations (3d Ed.) Vol. 3, sec. 2401, p. 1105; Cook on Corporations (6th Ed.) Vol. 3, sec. 162, p. 2579; Fletcher on Corporations, Revised Edition, Vol. 6, sec. 2729, p. 589; Jones on Corporate Bonds and Mortgages, sec. 325; 14A Corpus Juris, pp. 644 and 648. We conclude that the purchase by the Louisville Railway Company of its first mortgage bonds under the proposed refinancing plan, after the maturity of the bonds has been extended, will not extinguish the bonds.

The third question presented requires a consideration of an Act of the General Assembly of Kentucky approved January 22, 1867, entitled "An Act to incorporate the Louisville Railway Company," Acts of 1867, vol. 1, p. 68, c. 1068, and an act amendatory thereto approved April 16, 1890, Acts of 1889-90, vol. 2, p. 756, c. 842. The act of 1867 granted a charter to the Louisville Railway Company for a term of thirty years. By the act of 1890 it was provided that:

"Sec. 1. The charter of the said railway company is hereby extended, and it shall have power to acquire such real estate as may be required for the business of operating a street railway. * * *

"Sec. 4. The said company shall have the right to borrow money and issue bonds to such an amount as may be authorized by a vote of the

holders of a majority of the stock, bearing interest at a rate not exceeding six per cent. per annum, and running for a period not exceeding forty years from date thereof.''

It is suggested that section 1 of the amendatory act provides only for an extension of the powers of the corporation and not for an extension of its life. We think, however, that when the act is read as a whole, it clearly discloses that the Legislature intended to extend the railway company's corporate existence for an indefinite period of time. The charter would have expired within a few years and the Legislature had authority to extend the company's corporate existence or to amend its charter in any manner or even to repeal the act creating it by virtue of an act reserving such powers to the General Assembly approved February 14, 1856, Acts 1856, vol. 1, p. 15, c. 148. The word ''extended'' is peculiarly applicable when the question of time is being considered and the use of the word was unnecessary if the Legislature had intended merely to grant broader powers to the corporation. When the Legislature by the amendatory act granted to the company the right to issue bonds running for a period not exceeding forty years from date thereof, it indicated that it had theretofore in section 1 of the act extended the company's corporate existence. In Moers v. City of Reading, 21 Pa. 188, the court, in defining the extension of a charter, said:

''To extend a charter, is to give one which now exists greater or longer time to operate in than that to which it was originally limited.''

This court, in Franklin County Court v. Deposit Bank of Frankfort, 87 Ky. 370, 9 S. W. 212, 10 Ky. Law Rep. 506, considered the meaning of the word ''extension'' as used in an act of the Legislature which provided for the extension of the charter of the Bank of Kentucky. It was held that the act in question merely extended the life of the corporation and was not the grant of a new charter.

Our conclusion is that the Louisville Railway Company is a duly organized and existing corporation. The judgment of the circuit court being in all respects in accordance with the views herein expressed, it is affirmed.